# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

TRACY LYNN WATKINS,

          Plaintiff,

vs.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

          Defendant.

No. 16-CV-4028-CJW

**MEMORANDUM OPINION AND
ORDER**

_____

The plaintiff, Tracy Lynn Watkins (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying claimant's application for disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U.S.C. § 401 *et seq*. For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    BACKGROUND

For this background, the Court relies on the administrative record (AR) and the Joint Stipulation of Facts (Doc. 11). Claimant was born in 1961. (AR 33, 77, 171). Claimant filed her DIB application on March 16, 2014, with an alleged onset date of April 12, 2009. (AR 13, 171-72). Her claim was denied on initial consideration on September 3, 2014, and again denied upon reconsideration on December 30, 2014. (AR 109-12, 114-17). Pursuant to her request for a hearing, Administrative Law Judge (ALJ) David G. Buell held a hearing on January 4, 2016. (AR 39-78). At the hearing, claimant was represented by an attorney. Claimant and a vocational expert testified. Then on February 2, 2016, the ALJ issued a decision denying claimant's application for the relevant time period starting on April 12, 2009. (AR 13-34). Claimant sought review

from the Appeals Council, which denied her request on February 24, 2016. (AR 1-6. The ALJ's decision thus became the final decision of the Commissioner. *Sims v. Apfel*, 530 U.S. 103, 107 (2000).

Claimant filed a complaint (Doc. 2) with this Court on April 22, 2016, seeking review of the ALJ's decision. On June 17, 2016, with the consent of the parties (Doc. 7), the Honorable Linda R. Reade transferred this case to a United States Magistrate Judge for final disposition and entry of judgment. On November 23, 2016, the matter was fully briefed.

## II.    DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual has a disability when, due to his physical or mental impairments, he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. "Substantial" work activity

involves physical or mental activities. "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit.

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. If the impairments are not severe, then the claimant is not disabled. An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to perform basic work activities. *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20 C.F.R. § 404.1521(b)).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant can still do his past relevant work then he is considered not disabled. Past relevant work is any work the claimant performed within the past fifteen years of his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the

claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (citations and internal quotation marks omitted). The RFC is based on all relevant medical and other evidence. The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. The Commissioner must show not only that the claimant's RFC will allow him or her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps, the ALJ has determined the claimant is disabled, but there is medical evidence of substance use disorders, the ALJ must decide if that substance use was a contributing factor material to the determination of disability. 42 U.S.C. §423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id.* If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability, and the claimant is not disabled.

### III. THE ALJ'S FINDINGS

The ALJ made the following findings at each step.

At Step One, evaluating claimant's work attempt after her alleged onset date, the ALJ found that claimant has not engaged in substantial gainful activity since April 12, 2009. (AR 16).

At Step Two, the ALJ found that claimant has the following severe impairments: mood disorder; degenerative disc disease of the cervical spine with chronic radiculopathy at C7; posttraumatic stress disorder (PTSD); anxiety disorder; bilateral carpal tunnel syndrome (CTS); and methamphetamine dependence in partial remission since April 2015. (AR 16). The ALJ found claimant has the non-severe impairments of headaches; hepatitis C; arthritis in hands; derceased vision; chronic obstructive pulmonary disorder (COPD); and psoriasis. (AR 16-17).

At Step Three, the ALJ found that claimant's impairments, including her substance abuse disorder, satisfy Listing 12.06 and Listing 12.09. (AR 17-22). The ALJ, however, determined that if claimant stopped her substance abuse then she would no longer satisfy either listing. (AR 22-23).

At Step Four, the ALJ found that if claimant stopped her substance abuse then claimant would have the following residual functional capacity:

> [Claimant can] perform light work as defined in 20 CFR 404.1567(b) but with additional limitations. She would be able to respond to changes in her environment and perform simple and repetitive work that does not require more than brief, incidental contact with the public. The claimant would be able to perform work that does not require more than frequent stooping or crawling.

(AR 23-33). The ALJ also determined that claimant has no past relevant work. (AR 24).

Finally, at Step Five, the ALJ found that if claimant stopped her substance abuse then an individual with her same age, education, and RFC could perform the following

jobs—photocopy machine operator, routing clerk, packing line worker, addressor, and callout operator—that exist in significant numbers in the national economy.  (AR 34).

## IV.    *THE SUBSTANTIAL EVIDENCE STANDARD*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole."  *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion."  *Lewis*, 353 F.3d at 645.  The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal."  *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations and internal quotation marks omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence."  *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted).  The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it.  *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010).  The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial."  *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence.  *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989).  The court, however, does not

"reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) (citation omitted) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V.    DISCUSSION

The Court now turns to address claimant's arguments. Claimant alleges that the RFC assessment is flawed. Claimant's brief does not contain extensive or detailed legal arguments. Thus the Court will, to its best understanding, address the legal arguments claimant raises. The Court has categorized claimant's argument as follows: (1) the ALJ failed to properly weigh Dr. Carter-Visscher's report for the VA; (2) the record supports that claimant is in complete remission, thus her substance abuse is not a contributing factor material to her disability determination and therefore the RFC assessment is wrong; and (3) *Rhines v. Harris*, 634 F.2d 1076 (8th Cir. 1980) provides authority that claimant is not realistically employable.

Before the Court addresses claimant's arguments, a brief history of claimant's substance abuse is appropriate as it is relevant to the claims. Dr. Carter-Visscher's report nicely summarizes claimant's substance abuse history as follows:

> *Pre-military*: Some social alcohol and marijuana use with no negative consequences.
>
> *Military*: DUI after first joined the military related to social alcohol use. Started using methamphetamine socially a couple of years into the military and did not meet criteria for amphetamine dependence at that time. Began using methamphetamine regularly after the sexual assault to "forget" the rape and to keep her awake because she was afraid to sleep as she felt vulnerable to being assaulted in the dark.
>
> *Post-military*: Methamphetamine dependence continued until about 1995 when cocaine became the primary substance of choice. She used cocaine and met criteria for cocaine dependence from about 1995-1998 until she went to jail. After jail, she refrained from methamphetamine and cocaine use until she relapsed on methamphetamine in 2002. She then used methamphetamine off and on until April 2013. She reported a couple of periods of abstinence from drug use around 2005-2007 and again from 2010-late 2011 or 2012. She reported significant methamphetamine use in 2012 until she recently stopped use again in April 2013. She reported some marijuana over the years but it has not been consistent and has not been her primary drug of choice. Her records also report a history of benzodiazepine dependence and she admitted to obtaining benzodiazepines illegally.

(AR 593-94) (emphasis added). Also, the report notes that claimant participated in substance dependence treatment approximately on six occasions from 1993-2005 and that claimant had a history of noncompliance with taking her prescribed medication. (AR 592).

### A. ALJ Properly Considered Dr. Carter-Visscher's Disability Benefits Evaluation for Another Agency

The U.S. Department of Veterans Affairs' (VA) found claimant to be 100% disabled. (AR 32). In this context, Carter-Visscher, Ph.D., a clinical psychologist, authored an Initial Psychological Disability Questionnaire on PTSD [posttraumatic stress

disorder] for the VA. (AR 581-99). The report was based on a one-time evaluation of claimant on May 21, 2013. The report found claimant's substance abuse to be in "early remission." Claimant argues that the ALJ failed to properly consider this report.

Claimant contends that this report, when evaluated properly by the ALJ, undermines the RFC assessment.[1] (Doc. 17, at 5). The Court infers claimant's argument to logically progress as follows: because claimant has been sober since May 2013 (date of report), her severe impairments (as they exist from May 2013 to the date of the ALJ's decision) satisfy listings 12.06 and 12.09 because her drug use is no longer a contributing material factor; thus she is disabled. Or alternatively, claimant is disabled even without satisfying the listings as her RFC would render her unemployable. The Commissioner maintains that the ALJ properly weighed this report authored for another agency, and that the RFC assessment by the ALJ was proper. (Doc. 18).

The record as a whole supports the ALJ's finding that claimant continued her drug use. Furthermore, the record supports the ALJ's finding that in periods of sobriety claimant has less active symptomology of her mental impairments. When sober, claimant

---

[1] Claimant misquotes Dr. Carter-Visscher's report. Claimant quotes the report as follows: "However, Tracy has not participated in treatment that assist may [sic] her in learning the coping skills necessary to effectively manage her PTSD symptoms and maintain gainful employment. Therefore, this provider can say that she is unable to gain and maintain gainful employment due to her PTSD symptoms as this time." (Doc. 17, at 5 (the quote should read, "[t]herefore, this provider cannot say that she is unable to gain and maintain gainful employment due to her PTSD symptoms as this time." (AR 599)). The Court believes this to be an unintentional typo. Even if claimant were to rely on this quote to contend that Dr. Carter-Visscher opined claimant is unable to work, such an opinion is a non-medical opinion that invades the discretion of the Commissioner and as such gets little weight. *See Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (citing *Stormo,* 377 F.3d at 806) (opinions by treating medical professionals stating that an applicant is "unable to work" or "disabled" get limited weight). Furthermore, as the ALJ correctly noted, Dr. Carter-Visscher opined on disability under the standards of another agency, namely the VA. Other agency's disability findings are not binding on the Commissioner. 20 C.F.R. § 404.1504.

does not satisfy any listing and her RFC will allow her to find employment. Therefore, because claimant's drug use is a contributing material factor, she is not disabled.

With regard to Dr. Carter-Visscher's report, in the absence of controlling weight being given to a treating source, the ALJ will weigh the medical opinions on the record. *See* 20 C.F.R. § 404.1527(c) (concerning examining relationship, treatment relationship, supportability, consistency, specialization, and other factors). Under the regulations, acceptable medical sources include licensed or certified psychologists. *See* 20 C.F.R. § 404.1513(a)(2). Generally, the opinions of nonexamining sources are given less weight than those of examining sources. *Wildman v. Astrue*, 596 F.3d 959, 967 (citation omitted); 20 C.F.R. 404.1527(c)(1). The ALJ found Dr. Carter-Visscher to be an examining source and gave his opinion "some weight." AR 17, 27. Commenting on Dr. Carter-Vissscher's report, the ALJ stated the following:

> Although Dr. Carter-Visscher stated that she was unable to differentiate between what symptoms and to what degree the claimant was affected by substance use versus her psychological condition, it is clear that she lacked a full perspective, as she saw the claimant on just one occasion. To the contrary, the undersigned is not so limited, since the evidence as a whole – including later findings from treating sources – clearly illustrates a greater level of severity when substance use is considered.

AR 21-22. The ALJ took note of portions of Dr. Carter-Visscher's opinion as follows: claimant's symptoms related to her psychological disorders would exist, to some degree, even in the absence of substance abuse (AR 22); claimant did not seek out treatment for her mental health concerns (AR 26; *see* AR 592 ("[Claimant] has been prescribed medications pretty consistently for several years but did not take them consistently over the years, even during periods of sobriety.")); and claimant had the severe impairments of PTSD and anxiety (AR 22). The ALJ cited a portion of Dr. Carter-Visscher's report ("[claimant's] PTSD symptoms and secondary substance dependence disorders have created significant difficulty with concentration, ability to tolerate work related stress and

moderate to severe absenteeism, which has made it difficult for her to maintain employment for a substantial period of time. However, [the claimant] has not participated in treatment that may assist her in learning the coping skills necessary to effectively manage her PTSD symptoms and maintain employment. Therefore, this provider cannot say that she is unable to gain and maintain gainful employment due to her PTSD symptoms at this time."). AR 26-27 (second alteration in original). Describing his decision to give Dr. Carter-Visscher some weight, the ALJ stated:

> Although inherently ambiguous, such that the claimant is considered to have "difficulty" or "moderate" impairments in certain activities, the opinion of Dr. Carter-Visscher is given some weight, to the degree that her alleged limitations are consistent with the remainder of the evidence regarding psychological impairment, with the specific aspects that the claimant has not participated in appropriate treatment for her conditions and is not found to definitively be unable to perform substantial gainful activity afforded greater consideration. Although the second portion thereof is a conclusory statement, and one upon which final determination is reserved to the Commissioner, it is nonetheless consistent with the ultimate outcome given the preponderance of the evidence.

AR 27. Specifically, Dr. Carter-Visscher's report lists claimant's diagnoses as follows: (1) PTSD; (2) amphetamine dependence[2] in "early full remission since April 2013"; (3) cocaine dependence currently in "sustained full remission." AR 583. At the conclusion of the report, Dr. Carter-Visscher opines claimant's "PTSD and substance dependence disorders, currently in remission, are most likely caused by or a result of her sexual

---

[2] The Court notes the interchangeable use throughout the administrative record between the terms methamphetamine and amphetamine. Claimant testified to smoking ice (slang for crystal methamphetamine). The urine of a person who used methamphetamine will test positive for amphetamine. *See* AR 593 (Dr. Carter-Visscher writes that claimant never met the criteria for amphetamine dependence and notes that claimant "recently stopped use [of methamphetamine] again in April 2013"; (AR 583) ("methamphetamine dependence ... currently in early full remission since April 2013"); and (AR 776) (Dr. Skorey's clinic note (AR 775) describes claimant as relapsing with "amphetamine" and then concludes his diagnostic impression that claimant is dependent on "methamphetamine").

assault while serving in active duty military." AR 599. The Court notes that much of the report consists of check-marks (AR 582-86, 594-98).

The Court finds that the ALJ properly considered and weighed Dr. Carter-Visscher's report. AR 17, 21-22, 26-27, 29. Dr. Carter-Visscher evaluated claimant on a single occasion. *Kirby*, 500 F.3d at 709 (opinion of a consultative physician was entitled to no special weight). Furthermore, the ALJ noted inconsistencies in the record that contradicted the report. AR 18 (multiple sources on the record state that claimant did continue abusing substances through April 2015). *See Estes v. Barnhart*, 275 F.3d 722, 735 (8th Cir. 2002) (finding the ALJ properly gave little weight to a treating psychologist's opinion, which was inconsistent with other medical opinions on record); *see also Pearsall v. Massanari*, 274 F.3d 1211, 1218-19 (8th Cir. 2001) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians [and the] ALJ may reject the conclusions of any medical expert . . . if they are inconsistent with the record as whole."); *Bentley v. Shalala*, 52 F.3d 784, 785-87 (8th Cir. 1995) (same). Given these inconsistencies with the other evidence on the record, the ALJ was justified in giving the report only "some weight." Furthermore, the ALJ was justified in giving less weight to Dr. Carter-Visscher's report because a significant portion of it lists where Dr. Carter-Visscher made checkmarks. *See Wildman*, 596 F.3d at 964 (ALJ properly discounted a treating source's opinion where it consisted of three checklist forms, did not cite medical evidence, and provided at most little elaboration). Thus, the Court finds that the ALJ's decision to give Dr. Carter-Visscher's report some weight was proper.

### B.     *The Record Supports Finding Claimant's Drug Use Is A Material Contributing Factor Thus The RFC Assessment is Proper*

Claimant argues that her "substance abuse disorder is not a contributing factor material to the determination of disability, as she was in remission at the time of Dr.

Carter-Visscher's evaluation [May 2013]." (Doc. 17, at 7). The ALJ, however, found that claimant's drug use continued into early 2015 (AR 18) and that claimant's methamphetamine dependence was only in partial remission since April 2015 (AR 16). The record supports this finding.

On January 4, 2016, at the hearing before the ALJ, counsel for claimant stated that claimant has struggled with substance abuse but has been clean for approximately three years with the caveat that claimant relapsed for three months (ended in December 2014). AR 43. Claimant continued to make this assertion at the hearing. Claimant told the ALJ that the last time that she used methamphetamine was December 23, 2014. AR 69. She further elaborated that any records to the contrary were likely a result of her "therapist" recording her "urges/desires" to use. AR 70-71. Overall, claimant described herself as being sober for "three years [starting four years ago]" and then "us[ing] for like three months, and then g[etting] back on board here a year, ago, December, this time." AR 60.

The ALJ found claimant's testimony to be incredible. The ALJ wrote that "the record is quite clear and convincing that [claimant] continued to use methamphetamine through April 2015." AR 18. The ALJ found multiple sources confirm claimant's drug use in early 2015. *Id.*[3] The ALJ further wrote that claimant "was clearly less than forthcoming regarding her substance use when testifying under oath at the hearing . . . detract[ing] from her credibility overall." (AR 30).

From a thorough review, the Court finds that the record as a whole supports the ALJ's finding of claimant's testimony about her sobriety since December 23, 2014 to be

---

[3] The ALJ wrote that "multiple sources confirm the claimant's direct report of methamphetamine use during this period in early 2015." (AR 18). The Court finds this to be a typographical error given the rest of the ALJ's decision. The Court interprets this statement to mean despite claimant's direct denial of use, multiple sources confirm claimant's methamphetamine use into early 2015. Regardless this sentence is of minor importance.

incredible. The record clearly shows that claimant continued her drug use beyond December 2014. Records from March and April of 2015 clearly document claimant's continued drug use. First, the record reflects several interactions between claimant and Sioux Falls VA HCS in March 2015. (AR 777-87). A note authored on March 16, 2015, by a social worker, states claimant is "smoking ICE daily. Last use was last night. She intends to NOT use tonight." (AR 779). Then the record reflects VA staff trying to unsuccessfully contact claimant to follow-up with her call (AR 780—claimant did not pick up her phone). Then on March 18, 2015, the record reflects that a VA staff member spoke with claimant and noted the following: claimant is staying with daughter so she has not used for past two days; claimant wants more intensive treatment to "accomplish stable recovery." (AR 777). Claimant failed to appear for her scheduled ATP [Addictions Treatment Program] Intake at the VA March 24, 2015. (AR 776-77). Second, notes from April 2015 verify claimant's continued drug use. A note from the VA dated April 15, 2015, documented claimant's medication check. The treatment note was authored by Dr. Skorey. (AR 775-76) ("[S]he has had problems with relapse amphetamines. She did go ahead and move to Lamars to be closer to her older daughter. She says that this has been stabilizing. She had made contact with ATP in Sioux Falls, and was scheduled to go into the IOP [Intensive Outpatient] program . . . Mr. Young's note indicated that people had mentioned to him that she was having a significant relapse."). Later, on April 27, 2015, a social worker recorded that claimant stopped by the clinic and reported "last using methamphetamine three weeks ago." (AR 772). This would place claimant's last use within the month of April 2015. Therefore the record supports the ALJ's finding of claimant's continued drug use into 2015.

### *1. ALJ's finding that claimant's impairments—when stopping her drug use—would not satisfy Listings 12.06 and 12.09 is proper*

The Court now moves to assess the remainder of the ALJ's decisions. The central inquiry is whether the Commissioner "would still find [claimant] disabled if [she] stopped using drugs." 20 C.F.R. 404.1535(b)(1). Claimant carries the burden of proving that her "substance abuse is not a contributing factor material to the claimed disability." *Estes*, 275 F.3d at 725. The ALJ must follow two steps here. First, the ALJ must determine if any of claimant's limitations would remain once claimant stopped her substance abuse. Second, of those, if any, remaining limitations would be disabling. *Rehder v. Apfel*, 205 F.3d 1056, 1060 (8th Cir. 2000). The Commissioner contends that the ALJ's decision was supported by the record and was within his zone of choice. (Doc. 18).

The ALJ determined that claimant satisfied listings 12.06 and 12.09 while using drugs; without substance abuse, however, the ALJ found claimant no longer satisfied either listing. When claimant uses drugs, the ALJ found that the claimant satisfied listing 12.06 (anxiety-related disorders) and also by default listing 12.09 (through satisfying the requirements of listing 12.06—without listing 12.06 claimant would not otherwise satisfy 12.09). In regard to listing 12.06 claimant satisfied the following: "paragraph A" criteria notably with recurrent/intrusive recollections of a traumatic experience, "paragraph B" criteria with marked restriction in maintaining social functioning and marked restriction in maintaining concentration/persistence/pace. The ALJ, however, found that once claimant stopped her drug use she was less affected by "active symptomatology" for her mental condition. (AR 21) (relying on Dr. Skorey's opinion that claimant's anxiety disorder related to methamphetamine abuse).[4] The ALJ concluded that in the absence of

---

[4] The ALJ discounted Dr. Carter-Visscher's opinion—that claimant's methamphetamine dependence is "secondary to PTSD"—by noting that Dr. Carter-Visscher admitted that she was unable to tell "to what degree" claimant's substance abuse affected her psychological condition,

drug use, claimant would not satisfy listing 12.06's paragraph B criteria. With no drug use, claimant would only have: mild limitation in activities of daily living; moderate difficulties in social functioning; and moderate difficulties in concentration, persistence, and pace. (AR 23). Also, claimant would have no periods of extended decompensation, and claimant would not meet listing 12.06's paragraph C criteria. *Id.* Thus when claimant was not using illegal drugs, she would fail to satisfy either listing (by her failure to satisfy listing 12.06's paragraph B criteria).

There is substantial evidence on the record as a whole that supports the ALJ's finding that when claimant was not using illegal drugs, she no longer satisfied either listing. Substantial evidence supports the finding that when claimant was not using illegal drugs she only had mild limitations in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence, and pace for listing 12.06. For example, during a period of sobriety, in April 24, 2013, (24 days since drug use) a note from an initial session describes claimant as having a euthymic mood and being very pleasant with full affect, congruent mood, connected and clear thoughts, appropriate speech, goal oriented. (AR 411). On May 23, 2013, (56 days since drug use) a clinic note reflects that claimant "feels good" about being sober and wishes to remain sober so that she can be there for her grandchildren, is in a relationship with a boyfriend, got a puppy, and attends rummage sales and goes to Good Will. (AR 407-08). The same note also described claimant as oriented to time/place/person, punctual arrival, appropriate dress and hygiene, good eye contact, cooperative and pleasant, good recent and remote memory, goal oriented, fair insight and judgment. (AR 409). The Commissioner points to several other medical records documenting as normal and positive claimant's mood, appearance, and interactions (Doc. 18, at 7-10), as follows:

---

while he lacked such limitation as he reviewed the "evidence as whole." (AR 22). As noted, the ALJ only gave Dr. Carter-Visscher's report "some" weight.

(AR 400-01) (clinic note dated June 23, 2016, states claimant displayed some anxiety but also displayed clear thoughts, goal oriented, casual dress, good hygiene, good eye contact, pleasant and euthymic mood, talkative mood, denied suicidal thoughts); (AR 467) (clinic note signed by Dr. Peter Pick on July 7, 2014, states claimant reported she had mild insomnia, was afraid of crowds, but reported she was not afraid of specific people and displayed an appropriate and cooperative affect, was alert and oriented, normal intellect/judgment/memory/knowledge/conversation/insight, and displayed coherent ideas); (AR 482) (clinic note signed by treating psychiatrist Dr. Skorey on August 26, 2014, states claimant is taking nortriptyline for headaches, seemed "somewhat" anxious, but was also alert, cooperative, oriented, good motor activity with no tremors or tics); (AR 734, 776) (clinic notes signed by Dr. Skorey in April 2015 and November 2015 describing claimant as alert and cooperative, positive mood, no tremors or tics, no hallucinations/delusions/compulsions, fair sleep, fair appetite, no suicidal thoughts); (AR 784) (clinic note by Dr. Pick signed March 12, 2015, neurologist finding a positive mood, alert, oriented, some mild insomnia and fear of crowds, normal insight/judgment/memory/conversation, and normal gait and normal muscle tone for neck, back, and extremities); (AR 747) (clinic note signed August 2015 describing claimant as displaying good eye contact, appropriate dress and speech); and (AR 729) (clinic note signed December 8, 2015, describing claimant as self-reporting that she "feels safe in her living environment," denies headache, denies depressed mood/sleep disturbances/excessive worry/irritability/suicidal thoughts).

Overall, the Court finds that substantial evidence in the record as a whole supports the ALJ's finding that when sober, claimant's impairments did not satisfy any listing.

## 2. The ALJ's finding that claimant's remaining limitations, when sober, are not disabling is supported

The Commissioner contends that the RFC assessment was within the zone of choice by the ALJ. Here claimant's RFC renders her not disabled as employment exists for someone with her RFC, age, education, and work experience. The Court finds that the RFC assessment is supported by substantial evidence. The same evidence cited in the previous section also supports the ALJ's RFC assessment. *Pearsall v. Massanari*, 274 F.3d 1211, 1217-18 (8th Cir. 2001) (citation omitted) (The ALJ has the responsibility to make an RFC assessment for a claimant based on "all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations.").

Further, the ALJ's credibility assessment further supports claimant's RFC. Before an RFC assessment is made, the ALJ must determine the claimant's credibility. The ALJ uses the well-established *Polaski* factors to evaluate a claimant's subjective complaints. *Id.* (citing *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir.1984)). An ALJ may discount a claimant's subjective complaints where they are inconsistent with "the evidence as whole." *Id.* (citation omitted). *See Pearsall*, 274 F.3d at 1217-18 (citing *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir.1987)) ("The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.").

Claimant's testimony at the hearing supports the ALJ's finding that claimant is able to do light work, have incidental and brief contact with the public, respond to environmental changes, frequently stoop/crawl, and perform simple-repetitive work. Claimant testified that she drives herself daily, does chores without assistance on a daily basis, visits her daughter and grandchildren often (AR 57), goes grocery shopping, tries to paint as a hobby "a little bit here and there" (AR 58), goes to AA meetings a couple of times per week (AR 59), her daughter oversees her finances (AR 61-62), watches her grandchildren for a "couple of hours" some days of the week (AR 67). In the

"Interrogatories" to the Social Security Administration, which claimant completed and signed on October 25, 2015, claimant writes that she engages in the hobby of "autoalogy [sic]" whereby she meets on a weekly basis on Sunday with "ladies" from Floyd Valley Apartments to "do autoalogy." (AR 307). Claimant answered "yes" to the question of whether she attends religious or family events.

In regards to credibility, the ALJ found the claimant to be credible regarding her symptoms/limitations in her "periods of substance abuse." (AR 21). During periods of sobriety, the ALJ found claimant's subjective testimony to be "minimally credible." (AR 25). ("[T]he allegations of limitations and a pain level that precludes all types of work are inconsistent with the objective medical evidence, the absence of more aggressive treatment, supporting medical opinions, and the evidence as a whole; thus, the allegations are minimally credible."). The ALJ properly considered claimant's failure to comply with medication. *See Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) ("An ALJ may discount a claimant's subjective complaints of pain based on the failure by claimant to pursue regular medical treatment"); *see also Goodale v. Massanari*, 257 F.3d 771, 774 (8th Cir. 2001) (ALJ found claimant's subjective complaints of pain incredible where claimant did not seek medical treatment and only took vitamins and aspirin to alleviate pain).

The ALJ also noted that the record supports a finding that claimant "failed to seek out appropriate treatment for her mental health conditions." (AR 26). Dr. Carter-Visscher stated that claimant did not "participate[ ] in treatment that may assist her in learning the coping skills necessary to effectively manage her PTSD symptoms and maintain employment." (AR 387). A treatment note from May 23, 2013 states claimant self-reported that she is currently "not on any psychotropic medications." (AR 407). A clinic note dated December 8, 2015 states claimant never stated Duloxetine "at all" and "not taking" Topimirate. (AR 729). Overall, the record supports the ALJ's credibility findings.

For the sake of thoroughness of its review, the Court addresses an argument neither party raises. There is no evidence before the Court that claimant's mental health problems caused her noncompliance with her medications/treatments and causes her drug use. *See Powers v. Astrue*, No. 4:09CV3016, 2010 WL 1233934, at *10 (D. Neb. Mar. 22, 2010) (affirming ALJ's decision that claimant is not disabled as her alcoholism and drug use are material contributing factors and holding "[d]espite [claimant's] underlying mental health problems, [she] remains able to abstain from abusing alcohol and drugs, and she is able to take her medications as prescribed."). Here, the ALJ found when claimant was sober, even when she was noncompliant with medication, claimant was not disabled. The evidence discussed above supports this. *See e.g.*, (AR 407) (clinic note from May 23, 2013, in which claimant self-reported that she was "not on any psychotropic medications"). In the same clinic note (AR 408) claimant told the medical professional that she was currently attending rummage sales and acquiring household pets. The note described claimant as having fair judgment and insight, good eye contact, pleasant mood, intact memory (AR 409). The ALJ found that the active symptomatology of claimant's mental impairments lessened significantly when claimant was sober.

Therefore, the Court finds that the record as a whole supports both the ALJ's determination that claimant's substance abuse (in partial remission since April 2015) is a material contributing factor to her disability and that without such drug abuse claimant's RFC assessment makes her not disabled.

### C.    The Court is unpersuaded by claimant's citation to Rhines v. Harris

Claimant contends that the underlying rationale of *Rhines v. Harris*, 634 F.2d 1076, 1079 (8th Cir. 1980) applies here. Claimant cites *Rhines* for the proposition that some claimants with impairments may not be realistically employable, as employers are concerned with "substantial capacity, psychological stability, and steady attendance." (Doc. 17, at 6) (citing *Rhines*, 634 F.2d at 1079 (quoting *Thomas v. Celebrezze*, 331

F.2d 541, 546 (4th Cir. 1964)). Also claimant quotes "[employers] will not unduly risk increasing their health and liability insurance." The Commissioner did not explicitly address this argument.

In *Rhines*, the court concluded that the ALJ erred in concluding that employment realistically existed for claimant Ms. Eloise Rhines in the economy. *Rhines*, 634 F.2 at 1079. The court found that Ms. Rhines had the following: an eighth-grade education; reading ability on a fifth-grade, nine month level; past work as an assembly worker and maid; injury to spine; severe and recurrent pain in arms, right foot, shoulders, back (takes pain medication and muscle relaxants regularly, attends physical therapy once a week); severe psychological handicaps." *Id.* Evidence on the record characterized Ms. Rhines as a "multiply [sic] handicapped person" who was "borderline retarded" with "limited occupational alternatives." *Id.* at 1078.

The Court is unpersuaded by this citation. The facts here are distinguishable. Ms. Rhine had a very limited education and was characterized as borderline-retarded. Claimant, however, even attended one year of college and never attended special education classes. (AR 198). Although claimant testified to a gambling problem and that her daughter helps her manage her finances, nonetheless claimant engages in hobbies, spends time with grandchildren, drives and shops by herself, spent years taking care of own mother (preceding the relevant time period), engages in relationships, and is of fair insight and judgment with intact recent and remote memory. Unlike in *Rhines*, there is no indication of any severe intellectual-limitations of claimant on the record before the Court. Under the ALJ's RFC assessment, claimant is able to work in several jobs that exist in significant numbers in the national economy. In general, courts will not disturb the ALJ's decision if it falls within the ALJ's available "zone of choice." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (quoting *Culbertson*, 30 F.3d at 939). A decision does not fall out of the zone of choice merely because the court, had it served as the initial fact finder, would have reached a different decision on the facts; instead, as

long as the ALJ's decision is supported by "substantial evidence" in the record it falls within the ALJ's "zone of choice." *Hacker*, 459 F.3d at 936 (quoting *Holley*, 253 F.3d at 1091). Here the substantial evidence on the record as a whole supports the ALJ's finding that the claimant is employable and not disabled.

## VI. CONCLUSION

After a thorough review of the entire record, the Court concludes that substantial evidence in the record as a whole supports the ALJ's decision to find claimant was not disabled. Accordingly, the Court **affirms** the decision of the ALJ. Judgment shall be entered in favor of the Commissioner and against claimant.

**IT IS SO ORDERED** this 13th day of February, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa